```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff**, | |
| v. | **CRIMINAL NO.** 10-357 (FAB) |
| EDWIN BERNARD ASTACIO-ESPINO, | |
| **Defendant.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Pending before the Court is defendant's motion to compel discovery.  (Docket No. 79.)  Having examined the motion, the government's response, and defendant's reply to that response, the motion to compel is **DENIED**.

**I.   Procedural Background**

On May 13, 2010, the government filed a criminal complaint against defendant Edwin Bernard Astacio-Espino ("defendant") alleging three counts, including disabling an aircraft in the special jurisdiction of the United States, endangering the lives of two individuals engaged in the operation of a helicopter and killing a third, and discharging a firearm in furtherance of a violent crime.  (Docket No. 3.)  A grand jury later returned an indictment charging defendant Astacio-Espino with:  (1) destruction

Criminal No. 10-357 (FAB)                                                           2

of an aircraft in violation of 18 U.S.C. §§ 32(a)(1) and 34; (2) using, carrying, and possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1); (3) performing an act of violence in a manner likely to endanger an aircraft in violation of 18 U.S.C. § 32(a)(6); and (4) possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).  (Docket No. 19.)  On May 20, 2010, the government certified that the offenses charged in the complaint carried a maximum penalty of death and requested that the Court identify this case as capital.  (Docket No. 7.)  Following defendant Astacio-Espino's arrest and initial detention, a detention hearing was held on September 8, 2010.  (Docket No. 15.)  At that hearing, Chief U.S. Magistrate Judge Justo Arenas found him to be a flight risk and a danger to the community.  (Docket No. 16.)  Magistrate Judge Arenas issued an order of detention pending trial finding that "no condition or combination of conditions will reasonably assure his appearance as required or the safety of any other person and the community."  (Docket No. 17 at 6-7.)

On March 14, 2011, defendant Astacio-Espino filed a motion to compel discovery of the following items:  (1) unredacted copies of several FBI 302 reports; (2) notes of agents investigating the case; (3) all materials prepared and relied upon by the

Criminal No. 10-357 (FAB)                                                    3
---

government's expert witnesses; (4) a file which allegedly contains information regarding a 2007 police brutality incident; (5) all material covered by the Jencks Act; and (6) a "black box" or GPS device from the helicopter involved in the incident giving rise to the indictment.  (See Docket No. 79.)  On April 5, 2011, the government filed a response opposing the motion, arguing: (1) that material was redacted from the FBI 302 reports either to protect the safety of the persons interviewed or because that information was not discoverable; (2) that disclosure of the names of any of its witnesses is not required until three days prior to trial; (3) that it is under no obligation to produce any Jencks Act material at this time; (4) that it has complied with its duty under Brady v. Maryland, 373 U.S. 83 (1963); (5) that it has provided expert witness material as required by Federal Rule of Criminal Procedure 16 ("Rule 16"); (6) that the helicopter to which the indictment referred did not contain a "black box" or similar device; and (7) that defendant Astacio-Espino has provided no reason for the disclosure of the 2007 FBI report that supersedes the general rule against disclosure of documents related to the investigation of a case.  (See Docket No. 84.)  On April 22, 2011, plaintiff filed a reply.  (Docket No. 89.)  On April 25, 2011, the Court ordered the government to submit redacted and unredacted

Criminal No. 10-357 (FAB)                                                4

copies of the relevant FBI 302 reports no later than May 2, 2011 for *in camera* inspection. The government complied with the Court's order, submitting the redacted and unredacted versions of the FBI 302 reports identified in the motion to compel.

## II.  Legal Analysis

### A.  Brady Standard[1]

Brady requires the government to produce to a defendant, in advance of trial, material exculpatory evidence that is within its possession. See 373 U.S. at 87; United States v. Agurs, 427 U.S. 97, 107 (1976); United States v. Huddleston, 194 F.3d 214, 222 (1st Cir. 1999). Evidence that is "within its possession" includes exculpatory material in the possession of any agency that participated in investigations related to the crimes charged. See Kyles v. Whitley, 514 U.S. 419, 438 (1995) (Brady requires production of evidence "known only to the police investigators and not to the prosecutors"). "Evidence is material under Brady only when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

---

[1] The Court makes clear that the obligation to provide Brady material is especially serious in a case such as this one, where the penalty of death is being sought by the government. Given the seriousness of that obligation, any failure to disclose materials in compliance with Brady that may come to light will be dealt with severely.

Criminal No. 10-357 (FAB)                                              5

been different.'"  United States v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000).  The duty to produce material exculpatory information encompasses the duty to investigate "any favorable evidence known to others acting on the government's behalf in the case, including the police."  Kyles, 514 U.S. at 437.  See also Ruiz v. United States, 221 F.Supp.2d 66, 74 (D.Mass. 2002).  "Brady does not, however, establish any 'general constitutional right to discovery in a criminal case . . . .'"  United States v. Rodriguez-Rivera, 473 F.3d 21, 25-26 (1st Cir. 2007) (quoting United States v. Caro-Muñiz, 406 F.3d 22, 29 (1st Cir. 2005)).

    Much of the evidence requested by defendant Astacio-Espino is primarily targeted for the purposes of impeachment.  (See Docket No. 159.)  "As a preliminary matter, it is clear that impeachment evidence falls within the Brady rule."  Dumas, 207 F.3d at 16 (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).  "The simple fact that evidence could be used to impeach a government witness, however, does not end the materiality inquiry."  Id.  "'Impeachment evidence, even that which tends to further undermine the credibility of the key Government witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist where that evidence is cumulative or collateral.'"

Criminal No. 10-357 (FAB)                                                6

Id. (quoting United States v. Sanchez, 917 F.2d 607, 618-19 (1st Cir. 1990)).

### B.  Specific Discovery Requests

#### 1.  Unredacted FBI 302 Reports

At the outset, it is clear that the disclosure of the majority of the requested materials is not, at this stage of the proceedings, required by any statute, rule, or case law.[2] The identities of the persons interviewed for the purposes of the FBI 302 reports are not, in themselves, exculpatory for the purposes of Brady, nor is their production required under Rule 16.  Defendant Astacio-Espino is essentially requesting that, due to the unique circumstances of this case, the Court exercise its broad discretion with regard to discovery in criminal cases and order the government to produce these materials.  (See Docket No. 79.)  Defendant Astacio-Espino requests the unredacted forms of certain FBI 302 reports that were provided by the government.  See id.  The Court

---

[2] Defendant Astacio-Espino cites to several cases allowing discovery prior to the U.S. Attorney General's Office authorization to seek the death penalty.  (See Docket No. 79.)  The situation in this case, however, is not one in which the government has refused to provide pre-authorization discovery.  See, e.g., United States v. Delatorre, F.Supp.2d 892, 899-903 (N.D.Ill. 2006).  The government has indeed provided discovery, but has redacted information which tends to identify the declarants whose statements are recorded in the FBI 302 reports.

Criminal No. 10-357 (FAB)                                                7

has inspected the requested materials and it does not appear that any of the redacted information needs to be disclosed at this time.

The majority of the material redacted from the FBI 302 reports deals with the identity of the persons interviewed.[3] Defendant Astacio-Espino argues that the identities of these individuals should be disclosed so that his counsel may independently investigate their statements. See id. It is clear, however, that the government is not required to disclose the identities of its witnesses until three days prior to trial in capital cases. See 18 U.S.C. § 3432. As this Court has previously stated, "[i]t is within the court's discretion whether to compel the prosecution to furnish a witness list prior to trial." United States v. Ortiz-Garcia, 553 F.Supp.2d 119, 120 (D.P.R. 2008) (Besosa, J.). In making this decision, the Court must balance the government's reasons for not disclosing the identities of its potential witnesses against "the defendants' specific showing of particularized need for the names, beyond the basic assertion that

---

[3] Defendant also requests three FBI 302 reports which contain admissions by defendant Astacio-Espino overheard by the persons interviewed. (See Docket No. 79.) Those three reports contain large redacted portions beyond the names of those individuals. That redacted material, however, also tends to identify the persons interviewed.

Criminal No. 10-357 (FAB)                                                8

such a list would aid in trial preparation." Id. (citing United States v. Schwimmer, 649 F.Supp. 544, 550 (E.D.N.Y. 1986)).

This Court previously addressed a similar situation and found that disclosure of potential government witnesses' identities was not warranted in the face of a particular threat to those individuals' safety. Ortiz-Garcia, 553 F.Supp.2d at 120. Defendant attempts to distinguish this case from the facts presented in Ortiz-Garcia by claiming that the government has not identified a specific danger to any potential witnesses, and that a generalized claim of harm is insufficient to withhold the identities of the persons interviewed in the FBI 302 reports. (See Docket No. 79.) Having reviewed the reports, however, the redacted material demonstrates a definite danger for potential witnesses who cooperate or give information to the government in this case. Even the redacted materials identify a specific fear voiced by one of the persons interviewed for the purposes of the FBI 302 reports. An individual interviewed on May 10, 2010 specifically expressed that "[redacted] is extremely afraid of [defendant] **and his friends** because they will kill [redacted] if they find out that [redacted] is talking to the police." (emphasis added). That statement, which has been provided to defendant Astacio-Espino, and the material reviewed *in camera* establish more than "a general claim of

danger due to the nature of the charges and the case." (See Docket No. 79 at 10.)

      For the most part, defendant Astacio-Espino's only articulated need for the identities of the persons interviewed in the FBI 302 reports is to investigate further the impeachment value of their criminal backgrounds.[4] The government has not identified any of the persons interviewed in the FBI 302 reports as witnesses for trial, nor need it do so at this point. It has conceded to defendant Astacio-Espino that some of the persons interviewed do have criminal backgrounds, and has also provided some material in the redacted FBI 302 reports which relates to some of those criminal activities. Should the government later choose to use the individuals interviewed in those FBI 302 reports as witnesses at trial, some of the redacted material, or even further information regarding the background of potential witnesses, may indeed need to be disclosed pursuant to Brady for impeachment purposes. At this point in the proceedings, however, the material disclosed and conceded by the government is sufficient for defendant Astacio-

---

[4] This need is only described in reference to those civilian witnesses which the government has conceded to have criminal backgrounds. Defendant has provided no specific justification or need for the disclosure of the identities of the law enforcement officers who were interviewed for several of the FBI 302 reports. (See Docket No. 79.)

Criminal No. 10-357 (FAB)                                                   10

Espino's counsel to represent him effectively in the death penalty authorization process.  Accordingly, defendant Astacio-Espino's request for unredacted copies of the FBI 302 reports is **DENIED**.

### 2. Government's Statement at Recent Status Conference

Defendant Astacio-Espino refers to a statement by the government at a recent status conference "that an informant indicated that he/she was concerned about the helicopter shooting because he/she was involved." (See Docket Nos. 79 & 84.)  He claims that this statement raises particular Brady concerns. (Docket No. 79.)  The government responds that "[w]hile on its face this statement insinuates the informant participated in the shooting, circumstances related to the informant demonstrate otherwise."  The government further expresses that "if the Court so desires, the Government is willing to provide, *ex parte*, additional facts regarding this statement [so that it may] be understood in its proper context."  (Docket No. 84.)  In order to address properly the defendants concerns regarding the statement and ensure that no additional material need be disclosed, the government is **ORDERED** to provide the Court, *ex parte*, with the additional facts to which it refers.

Criminal No. 10-357 (FAB)                                                     11

### 3. Jencks Act Material

Defendant Astacio-Espino requests that the Court order the government "to produce all Jenck's [sic] material during . . . the pre-authorization stage of the proceedings." He claims that "[t]he possibility of a death penalty authorization, a resultant capital trial and a potential death sentence clearly trumps the Jenck's [sic] Act restrictions on statement production." He cites to no legal authority, however, for this proposition. The Jencks Act provides that "no statement or report . . . made by a government witness or prospective witness . . . shall be subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. 3500(a). Thus, the clear terms of that statute expressly limit the Court's authority to compel the government to disclose any material within the scope of the Jencks Act, including case agents' rough notes, at this time. Therefore, defendant Astacio-Espino's request for any Jencks Act material not subject to Brady or Rule 16 is **DENIED** at this stage of the proceedings.

### 4. Helicopter "Black Box"

Defendant Astacio-Espino also requests that the government be compelled to produce "the helicopter's 'black box,' or any other device or record that would contain GPS-type

information of the location of the helicopter on a minute by minute, or second by second, basis." (Docket No. 79.) He concedes that the government has already represented that no such device exists, but "requests that the Court enter an Order directing the government to produce this evidence, or to enter a formal certification that none exists." The government has already informed defendant that no "black box" or similar device exists, and has stated as much on the record. Defendant Astacio-Espino has given the Court no reason to doubt the government's representations on the record nor any justification for requiring the government to enter any certification more "formal" than those representations. Accordingly, his request is **DENIED**.

### 5. Allegations Regarding the Statements of Other Individuals

Defendant Astacio-Espino requests that the Court order the government to produce the identities of certain individuals mentioned in one of the FBI 302 reports. He claims that "[s]ince it is to be expected that the government would have interviewed these other individuals whom Witness A identified for them and would have also produced these individuals's [sic] reports of interviews if they had also placed Mr. Astacio-Espino at the scene, it is logical to conclude that these other individuals did

Criminal No. 10-357 (FAB)                                                  13

not corroborate Witness A's statements, and this information is therefore at least potentially exculpatory." (Docket No. 79.) The government has stated that they did not interview any of the individuals to which defendant Astacio-Espino refers, and that it has complied with its discovery obligations under Brady and Rule 16 in that regard. Other than theories based entirely on speculation, defendant Astacio-Espino has given the Court no reason to doubt the government's assertions. Accordingly, his request is **DENIED**.

**6. Expert Materials**

Defendant Astacio-Espino requests that the Court order the production of "all working papers, case files and handwritten notes" of the government's expert witnesses. (Docket No. 79 at 20.) Rule 16, however, clearly lays out the government's obligation with regard to expert materials. With regard to statements of expert witnesses, Rule 16 provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed.R.Crim.P. 16(a)(1)(G). Further, should a defendant request it:

> the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or

Criminal No. 10-357 (FAB)                                              14

> experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows-or through due diligence could know-that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed.R.Crim.P. 16(a)(1)(F).  Defendant Astacio-Espino has not provided the Court with any basis to require the government to go beyond the obligations imposed upon it by Brady or Rule 16, nor has he indicated that the government has not complied with those obligations. Accordingly, defendant Astacio-Espino's request for additional expert materials is **DENIED,** especially as that request may relate to materials within the scope of the Jencks Act.

### 7.    2007 FBI Report regarding Police Brutality

Defendant Astacio-Espino requests production of a 2007 FBI report which allegedly details an incident of police brutality involving himself.  (Docket No. 79.)  The government opposes that production on the basis that he "fails . . . to provide any details on how this incident would assist him or is relevant to the present proceeding."  In his reply, defendant Astacio-Espino claims that the incident's relevance to this case "is evidence and does not need extensive elaboration."  Defendant provides little more explanation for his request other than to conclude that the report would be "at least relevant to issues of

mitigation at any potential sentencing in this case." Given the conclusory nature of his proffered basis for ordering production of the 2007 FBI report, defendant Astacio-Espino's request is **DENIED WITHOUT PREJUDICE** pending a renewed motion which more fully explains, and supports with legal authority, the mitigating potential of the report.

### III. Conclusion

For the reasons described above, defendant's motion to compel, (Docket No. 79), is **DENIED**. As detailed above in section II.B.2, the government is ordered to provide, *ex parte*, the additional facts relating to its statement at a recent status conference regarding the potential involvement in the crime charged.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, May 9, 2011.

s/ Francisco A. Besosa  
FRANCISCO A. BESOSA  
UNITED STATES DISTRICT JUDGE